UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———————————————

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:24-cr-20552 |
|     Plaintiff, | Hon. Nancy G. Edmunds |
| v. | |
| TRIBAR TECHNOLOGIES, INC., | Magistrate Hon. Anthony P. Patti |
|     Defendant. | |

———————————————————————/

## DEFENDANT TRIBAR TECHNOLOGIES, INC.'S
## SENTENCING MEMORANDUM

Tribar Technologies, Inc. ("Tribar") has accepted responsibility for and pleaded guilty to a criminal discharge in violation of the federal Clean Water Act. Pursuant to its Rule 11(c)(1)(C) plea agreement, Tribar and the government jointly recommend a sentence consisting of a $200,000 fine, an organizational probation for a period of five years, and a special assessment of $125. The jointly recommended sentence is supported by the sentencing factors in 18 U.S.C. § 3553(a), including the applicable sentencing guideline calculations, and is a reasonable, sufficient, and just sentence. Tribar submits this sentencing memorandum in advance of its sentencing hearing scheduled for April 29, 2025, to advise the Court of relevant background and sentencing

considerations and provide the Court with information so that it may meaningfully exercise its sentencing authority under 18 U.S.C. § 3553.

## I. Background

### *Tribar and Wixom Facilities*

Tribar is a Delaware corporation that operates five plants in southeast Michigan. (ECF No. 8, Plea Agreement ¶ 5, PageID.17.) Tribar Plant 5, located in the City of Wixom, applies chrome finishing to automotive parts. (*Id.*) Plant 5 generates wastewater that contains chromium compounds, including hexavalent chromium, a carcinogen. (*Id.*) Tribar operates a wastewater treatment system at Plant 5 to pretreat wastewater prior to discharging to the Wixom sanitary sewer system. (*Id.*) Tribar first collects wastewater in holding tanks where some chemicals may be added to facilitate treatment. (*Id.*) The wastewater is then sent from the holding tanks to a series of treatment tanks to remove pollutants. (*Id.*) The system allows recirculation back to the beginning of the process for additional treatment prior to discharge to the sewer system if further treatment is required. (*Id.* at PageID.17-18.)

Tribar's pretreated industrial wastewater feeds into Wixom's publicly owned treatment works ("POTW") via the sanitary sewer system. (*Id.* at PageID.18.) Because the POTW treats and discharges the wastewater into the Huron River and its tributaries, which are classified as Waters of the United

States, the discharges must be made in accordance with a National Pollutant Discharge Elimination System ("**NPDES**") permit pursuant to the federal Clean Water Act. (*Id.* at PageID.15.) The POTW's NPDES permit also requires the POTW to establish sewer ordinances that set the pretreatment standards Tribar must satisfy before releasing its wastewater into the POTW. The Wixom sewer use ordinance requires users Tribar to, among other things, (1) [i]mmediately notify Wixom by telephone of any accidental, nonroutine, or noncustomary batch discharge; and (2) prohibit bypass that is any intentional diversion of wastewater from any portion of a user's pretreatment system. (*Id.* at PageID.16-17.) The ordinances are federally enforceable by the U.S. Environmental Protection Agency ("**EPA**") under the Clean Water Act or the Michigan Department of Energy, Great Lakes, and Environment ("**EGLE**"), which has been delegated approval authority from the EPA to review and approve POTWs pretreatment program. (*Id.* at PageID.15.)

*Summary of the Offense*

At the time of the offense Tribar held an EGLE-approved Industrial Pretreatment Program (IPP) for Plant 5 issued by Wixom which permitted Tribar to discharge pretreated wastewater into the Wixom sanitary sewer system, subject to the City's sewer ordinances. (*Id.* at PageID.16.) On or around July 23, 2022, Plant 5 held approximately 15,000 gallons of untreated

3

wastewater containing high concentrations of hexavalent chromium. (*Id.* at PageID.19.) Beginning Monday, July 25, 2022, Tribar employees treated the wastewater in a holding tank to reduce the amount of hexavalent chromium before releasing it into the Plant 5 wastewater treatment system. (*Id.*) On Friday, July 29, 2022, the wastewater in the holding tank still contained high concentrations of hexavalent chromium and required more treatment before it could be released into the wastewater treatment system. (*Id.* at PageID.19-20.)

On or around the evening of Friday, July 29, 2022, the sole Tribar employee operating Plant 5 wastewater treatment system discharged approximately 10,000 gallons of insufficiently treated wastewater from the holding tank into the Plant 5 wastewater treatment system. (*Id.* at PageID.20.) The employee disabled numerous alarms for the wastewater treatment system that should have notified the employee that the wastewater was not sufficiently treated for discharge to the Wixom sanitary sewer system. (*Id.*) The employee nevertheless discharged the insufficiently treated wastewater to the Wixom sanitary sewer system and ultimately to Wixom POTW in violation of Tribar's IPP Permit. (*Id.*) Tribar discovered the discharge of untreated wastewater on Monday, August 1, 2022, and reported it to Wixom on Monday, August 1, 2022, at approximately 12:23 PM. (*Id.*)

4

Tribar admits that the discharge is in violation of Sections 1317 and 1319 of Title 18 of the United States Code, which makes it illegal for any person to negligently violate a pretreatment standard under the Clean Water Act. 33 U.S.C. §§ 1317(d) and 1319(c)(1)(A). Tribar admits that it has negligently violated a pretreatment standard, namely the Wixom sewer use ordinance. (*Id.* ¶ 4(b), PageID.14.)

### *Remedial Efforts by Tribar since the Offense*

Since the events of August 1, 2022, Tribar has committed to numerous measures to ensure that such a violation will never occur again at its facilities.[1] Tribar has installed automated shut-off valves to the wastewater treatment system as well as a system that can provide remote, real-time information about the wastewater treatment status to Tribar management. (ECF No. 13, Final Presentence Report ¶ 35, PageID.105.) Tribar now mans the wastewater treatment system with three full-time employees, and management[2] has been trained to operate the system if it becomes necessary. (*Id.*) It has also implemented a new drug-testing policy for wastewater treatment operators

---

[1] Tribar is in negotiations with a buyer to purchase certain assets. If / when the deal is consummated, Tribar's Wixom plants will shut down.

[2] Following this offense most of Plant 5's management has been replaced. (ECF No. 13, Final Presentence Report ¶ 31, PageID.104.)

upon hiring and anytime there is reasonable suspicion of drug use. (*Id.* ¶ 41, PageID.106.)

Moreover, as part of its Plea Agreement, Tribar has committed to the development, adoption, implementation, and funding of an Environmental Management System and Compliance Program ("**EMS**") that will apply to all its facilities in the State of Michigan. A proposed plan for the EMS is attached to the Plea Agreement as Appendix A. (ECF No. 8, EMS Proposal, PageID.34-46.) As part of the EMS, Tribar will develop and implement a corporate policy against violating federal environmental laws that will be codified in a written compliance code. (*Id.* § 6, PageID.36.) This code, as well as all policies and procedures promulgated thereunder, will apply to all directors, officers, employees, and outside parties acting on behalf of the company. (*Id.* § 7.) To update and review these policies, Tribar will conduct a periodic risk assessment at least once a year. (*Id.* §§ 9-10.)

Additionally, under the EMS, Tribar will develop a system of internal and confidential reporting procedures regarding potential violations of federal environmental laws or Tribar's compliance code, policies, or procedures. Tribar will implement mechanisms to enforce its compliance code, policies, and procedures, including appropriate disciplinary measures. (*Id.* §§ 14-15.)

As part of its obligations under the EMS, Tribar will also conduct third party audits of Tribar facilities with an EPA-approved auditor. (*Id.* §§ 18-24.)

## II.     Legal Standard

Rule 11(c)(1)(C) authorizes the government to enter into plea agreements with parties in which the parties agree that a particular sentence is the appropriate disposition of the case. *See* Fed. R. Crim. P. 11(c)(1)(C). The Court, however, "retains absolute discretion whether to accept a plea agreement." *Id.*, Advisory Committee's Notes to 1999 Amendments. As the United States Supreme Court has observed:

> Federal sentencing law requires the district judge in every case to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of federal sentencing, in light of the Guidelines and other [18 U.S.C.] § 3553(a) factors. The Guidelines provide a framework or starting point—a basis, in the commonsense meaning of the term—for the judge's exercise of discretion. Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion.

*Freeman v. United States,* 564 U.S. 522, 529 (2011) (plurality opinion).

## III.    Sentencing Guidelines Calculation and Fine Methodology

In determining and imposing a sentence, the Court must consider the sentencing range established by the sentencing guidelines. 18 U.S.C. §§ 3553(a)(4). Organizations are sentenced pursuant to chapter 8 of the guidelines.

The parties agree that Section 8C2.10 governs the calculation of Tribar's offense. U.S.S.G. § 8C2.10. (ECF No. 8, Plea Agreement ¶ 8(A), PageID.22.) That Section provides, in relevant part, that "[f]or any count or counts not covered under § 8C2.1 (Applicability of Fine Guidelines), the court should determine an appropriate fine by applying the provisions of 18 U.S.C. § 3553 and 18 U.S.C. § 3572." *Id.* The parties agree that U.S.C. § 3571(c), (d), and (e) are the applicable provisions for establishing the calculation of Tribar's offense. (ECF No. 8, Plea Agreement ¶ 8(A), PageID.22.) Pursuant to those provisions, the parties agree that the maximum possible fine for Tribar's violation is the greater of (1) $200,000, (2) twice the gross pecuniary gain or loss; or (3) $25,000 per day of violation.  (*Id.*) Tribar admits that the greatest of those values is $200,000 and represents an appropriate fine for its unlawful conduct.

## IV.  Restitution

Tribar and the government agree that costs, and any payment by Tribar toward those costs, will be identified for the Court before sentencing, and that the Court will determine at sentencing who, if anyone, can be deemed a victim pursuant to the Crime Victims Rights Act ("**CVRA**") and the amounts of restitution they are owed, if any. (ECF No. 8, Plea Agreement ¶ 9(C).).) They further agree that no victim appears to have been physically harmed by

Tribar's offense. (*Id.*) Here, the Mandatory Victim Restitution Act does not mandate restitution for violations of the Title 33. 18 U.S.C. § 3663A(c)(1)(A). (*See also* ECF No. 13, Final Presentence Report ¶ 46, PageID.108.)

The parties agree that the Wixom Sewage Treatment Plant is a victim pursuant to the CVRA. (*Id.*) Tribar has paid approximately $33,481.00 to the City of Wixom in restitution and believes that this amount satisfies its obligation as to the City of Wixom. (*Id.* ¶ 17, PageID.102.) The government has not challenged this assertion.

The City of Ann Arbor has submitted a claim to be acknowledged as a victim under the CRVA. (*See* A-3, PageID.113.) The government endorsed the City's claim in an objection to the Initial Presentencing Report and argued that the City is entitled to restitution in the amount of $54,189.36 for three categories of expenses the City allegedly incurred in response to Tribar's violation:

1. Testing, consulting, and chemical/laboratory resources: $12,620.13;
2. City personnel expenses: $22,387.23; and
3. Financial losses related to reduced use of the City's canoe liveries: $21,182.00.

(*Id.* at A-1 & A-2, PageID.111-12.) No other person or entity has claimed victim status for Tribar's violation.

9

In its objection to the Initial Presentencing Report, Tribar denied that the City of Ann Arbor is a victim for the purposes of the CVRA because the City was neither directly nor proximately harmed by Tribar's discharges. (*Id.* at A-3, PageID.113.) The United States Probation Office agreed with Tribar's position, determining that "the City of Ann Arbor is not a victim and is not entitled to restitution" because the City was not "directly or proximately harmed." (*Id.* at A-4, PageID.114.)

Tribar and the City of Ann Arbor are presently negotiating a settlement of their ongoing dispute outside of this Court, and it is Tribar's hope and expectation that these negotiations will obviate the need for this Court's intervention. If Tribar and the City cannot reach a resolution, however, this Court should hold that the City of Ann Arbor is not a victim under CVRA in accordance with the Probation Office's recommendation and the applicable law and is accordingly not entitled to restitution under the CVRA.

Under the CVRA, a crime victim is entitled to "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771. The CVRA defines a "victim" as a person "directly and proximately harmed as a result of the commission of a Federal offense[.]" 18 U.S.C. § 3771(e). "The requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses." *In re McNulty*, 597 F.3d

10

344, 350 (6th Cir. 2010) (citation omitted). As to proximate cause, "[t]he basic question . . . is whether the harm alleged has a sufficiently close connection to the conduct at issue"—i.e., whether it is "foreseeable." *Robers v. United States*, 572 U.S. 639, 645 (2014). Here, any harm to the City of Ann Arbor caused by Tribar's violation was unforeseeable. The City's water intake is approximately fifty river miles downstream from the Wixom POTW, and any water from the POTW must traverse four separate dams and the associated dam ponds to reach the City's water. Tribar Technologies could not foresee that a discharge of hazardous waste could harm the City at such a distance.

Even if the City *were* a victim according to the CVRA—it is not—the expenses it has allegedly incurred are not subject to restitution under the CVRA. A sentencing court has discretionary authority to order victim restitution for certain enumerated costs and expenses pursuant to subsection 3663(b) of Title 18. 18 U.S.C. § 3663(a). None of the City's alleged costs qualify under these narrow categories. Accordingly, the City of Ann Arbor, even if it were a victim under the CVRA, would not be entitled to any amount in restitution.

In summary, Tribar and the City of Ann Arbor are currently negotiating the extent of Tribar's contribution to costs the City of Ann Arbor allegedly incurred in response to Tribar's violation. If this Court is asked to determine

11

whether Tribar owes restitution to the City, it should adopt the Probation Office's position that Tribar does not owe restitution to the City.

## V. Probation

Tribar and the government have further agreed that Tribar shall be sentenced to a term of organization probation for a period of five years. (ECF No. 8, Plea Agreement ¶ 9(A)(b), PageID.24.) Pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years. In considering whether to impose probation, the Court should consider the factors set forth in guidelines section 8D1.1, which include ordering a term of probation to ensure implementation of an effective compliance program or to ensure that changes are made within an organization to reduce the likelihood of future criminal conduct. U.S.S.G. § 8D1.1(a)(3), (6).

The parties have agreed upon the implementation of a rigorous, and comprehensive Environmental Management System and Compliance Program. (ECF No. 8, App'x A to Plea Agreement, PageID.34-46.) The parties agree that a five-year probationary period is appropriate for the proper implementation of the Environmental Management System and Compliance Program and to ensure that the organizational changes to Tribar reduces the likelihood of future criminal conduct.

## VI. Conclusion

Tribar respectfully recommends that the Court impose the parties' jointly recommended sentencing consisting of a $200,000 fine, an organizational probation for a period of five years, and a special assessment of $125.

Dated: April 22, 2025        Respectfully submitted,

> By: /s/ Madelaine C. Lane
> Madelaine C. Lane
> Kurt A. Kissling
> Michael T. Woo
> WARNER NORCROSS + JUDD LLP
> 150 Ottawa Avenue NW
> Grand Rapids, MI 49503
> 616.752.2000
> mlane@wnj.com
> kkissling@wnj.com
> mwoo@wnj.com
> *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF filing system and will send notification of such filing to the attorneys of record.

> /s/ Madelaine C. Lane
> Madelaine C. Lane
> WARNER NORCROSS + JUDD LLP
> 150 Ottawa Avenue NW
> Grand Rapids, MI 49503
> 616.752.2000
> mlane@wnj.com